UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **WANDA DENISE TROTMAN,** | } |
| **Appellant,** | } |
| v. | } Case No.: 5:24-cv-01587-RDP |
| **MELISSA W. MITCHELL,** | } |
| **Trustee.** | } |

**MEMORANDUM OPINION**

This matter is before the court on an appeal from the United States Bankruptcy Court for the Northern District of Alabama (the "Bankruptcy Court"). Appellant Wanda Denise Trotman ("Trotman") has appealed from the Bankruptcy Court's dismissal of her bankruptcy petition, arguing that the Bankruptcy Court's finding that she failed to timely pay the first installment of her filing fee was in error. After careful review, and for the reasons below, the court concludes that the Order dismissing Trotman's petition is due to be vacated, and this matter is due to be remanded to the Bankruptcy Court for further proceedings consistent with this memorandum opinion.

**I.      Background**

On September 17, 2024, Trotman filed for bankruptcy protection under Chapter 7. (Doc. # 6 at 7). Trotman was required to pay a filing fee of $338. (*Id.*). Trotman filed Form B103, "Application to Pay Filing Fee in Installments," (Doc. # 1-1 at 2), which required Trotman to pay the filing fee in four installments, with the first installment due on October 17, 2024. (Doc. # 6 at 7). On October 8, 2024, the Bankruptcy Court approved Trotman's application to pay her filing fee in installments. (Doc. # 1-1 at 5). Trotman asserts that on October 15, 2024, she spoke with Shelbey Cole, who was the Case Administrator of the Court, and they agreed to extend her payment

deadline to October 21, 2024. (Doc. # 6 at 7). Trotman also asserts that she purchased a money order for $84.50 (the amount of a single installment payment) and sent it via USPS Priority Mail Express to the Bankruptcy Court on October 18, 2024. (*Id.*). Trotman further asserts that USPS tracking indicates that the package was delivered on October 21, 2024 at 3:54 pm and was signed for by T. Claayton. (*Id.* at 8).

On October 25, 2024, the Bankruptcy Court issued a "Notice of Nonpayment of Required Filing Fee" that directed Trotman to pay the filing fee "within seven days from the date of this notice," and warned her that failure to comply would result in an order of dismissal. (Doc. # 1-1 at 5-6). On November 5, 2024, the Bankruptcy Court issued an "Order Dismissing Petition," citing "*failure to comply with the notice of deficient filing fees dated October 25, 2024*." (*Id.*). Trotman asserts that she saw the "Notice of Nonpayment of Required Filing Fee" on November 8, 2024, and that she called Shelbey Cole at the Bankruptcy Court to "inform her that the Money Order for the initial payment was inside the package." (Doc. # 9 at 11). However, Shelbey Cole allegedly told Trotman "that the package was indeed received, the form was indeed received but the Money Order was not received." (*Id.*). On November 13, 2024, Trotman filed a Declaration of Payment asserting that she sent a money order for $84.50 to the Bankruptcy Court on October 18, 2024 and that it was delivered on October 21, 2024. (Doc. # 1-2 at 5). Trotman filed a Notice of Appeal on November 19, 2024. (Docs. # 1-1 at 7; 3-1 at 7; 3-4 at 1).

**II.     Standard of Review**

District courts have "jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges." *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (quoting 28 U.S.C. § 158(a)). On appeal from a judgment of the bankruptcy court, "a district court functions as an appellate court. It reviews the bankruptcy court's legal conclusions de novo, but must accept

2

the bankruptcy court's factual findings unless they are clearly erroneous." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993); *see also In re Gaddy*, 851 F. App'x 996, 999 (11th Cir. 2021).

"De novo review requires the court to make a judgment independent of the bankruptcy court[], without deference to that court's analysis and conclusions." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001). A "bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharm. & Disc. II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005); *see also In re Gaddy*, 851 F. App'x at 999 ("A factual finding is not clearly erroneous unless, after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake has been committed.").

### III.  Discussion

Trotman argues that the Bankruptcy Court's factual finding that she failed to comply with the Notice of Nonpayment was clearly erroneous because "the evidence unequivocally demonstrates that Appellant purchased a Money Order in the exact amount of the initial payment due and that said payment was delivered **before** the stated deadline." (Doc. # 6 at 10) (emphasis in original). Additionally, Trotman argues that the Bankruptcy Court committed legal error by dismissing her case for nonpayment without a hearing. (*Id.* at 12). Trotman requests that the court reinstate the bankruptcy proceedings. (*Id.* at 18). Trotman also filed a second Brief in Support of Reversing the Order of Dismissal (Doc. # 9) that makes similar arguments that she had a right to a hearing under procedural due process principles (*Id.* at 13-19) and she requests additional relief in the form of compensation for financial losses and punitive damages. (*Id.* at 34).

####     A.     Reinstatement of Bankruptcy Proceedings

The Bankruptcy Court filed a Comment to Debtor's Appeal (Doc. # 8-1) asserting that Trotman should have brought these issues to the Bankruptcy Court's attention prior to filing an

appeal. (*Id.* at 2). Specifically, the Comment notes that "if the issues had been brought to the Court's attention before the appeal, the Court could have reinstated the Debtor's case and allowed the Debtor to continue making her installment payments." (*Id.*). The court agrees that the better approach would have been for Trotman to formally raise these points with the Bankruptcy Court. Nevertheless, because it appears that the Bankruptcy Court agrees with Trotman that her bankruptcy proceedings should be reinstated, Trotman's requested relief of reinstating the bankruptcy proceedings is due to be granted.

### B.     Monetary Relief

Trotman also claims monetary relief in the form of compensation for financial losses and punitive damages. (Doc. # 9 at 34). These requests are due to be denied. Trotman first argues that she should be compensated for financial losses incurred "as a result of this willful dismissal, including consultant costs, filing fees, re-filing fees, if any, and any other reasonable expenses incurred in pursuing this appeal, as part of equitable remedy under § 105(a)." (*Id.*). Trotman's argument misses the mark for several reasons. First, it is not clear that the Bankruptcy Court's dismissal of her case was "willful" in the sense that the court knew that Trotman had submitted her filing fee installment and willfully dismissed her case despite that knowledge. Second, Trotman repeatedly refers to the situation as one of administrative error, implying a mistake, not willfulness. (*See* Doc. # 9 at 12, 18-21, 25-28, 35). Third, the Bankruptcy Court's Comment suggests a similar lack of awareness of the issues surrounding receipt of Trotman's money order. (*See* Doc. # 8-1 at 2). Fourth, Trotman does not cite any case law supporting her request for compensation "as part of equitable remedy under § 105(a)." (Doc. # 9 at 34). Fifth, even if compensation were due, federal bankruptcy judges are entitled to judicial immunity. *See Bush v. Washington Mut. Bank*, 177 Fed. App'x 16, 17-18 (11th Cir. 2006). Finally, if Trotman had either formally alerted the Bankruptcy

4

Court to this perceived error or filed a motion to reconsider in the Bankruptcy Court, she would not have needed to incur the cost of appealing this action.

Trotman also argues that she is entitled to punitive damages "for serious harm caused to Appellant, stress and anxiety as a result of creditor harassment following the dismissal due to the egregious misconduct of court staff or trustee." (Doc. # 9 at 34). Once again, judicial immunity insulates bankruptcy judges from liability for any damages, including punitive damages. Additionally, Trotman does not include any facts to support the conclusion that the dismissal was "due to the egregious misconduct of court staff or trustee." (*Id.*). For example, Trotman notes that Case Administrator Shelbey Cole "graciously extended the initial payment deadline" (*id.* at 10), and otherwise frequently described the alleged misplacement of the money order as "administrative error." (*See id.* at 12, 18-21, 25-28, 35).

For these reasons, Trotman's requested relief in the form of compensation for financial losses and punitive damage is due to be denied.

IV.   **Conclusion**

For the reasons discussed above, the Bankruptcy Court's Order Dismissing the Petition is due to be vacated and this case remanded to the Bankruptcy Court to reinstate bankruptcy proceedings in accordance with this memorandum opinion. A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this January 22, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE